IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sondra Anderson,

Plaintiff

v.

Barclays Capital Real Estate, Inc.,

Defendant

Case No. 3:09CV2335

ORDER

This is a case about mortgage servicing. Plaintiff Sondra Anderson alleges defendant Barclays Capital Real Estate, Inc., d/b/a/ HomEq Servicing (HomEq): 1) was unjustly enriched by keeping portions of plaintiff's funds; 2) converted plaintiff's funds; 3) violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2) (RESPA); and 4) violated the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et seq*. (OCSPA). Plaintiff brings her common law claims on behalf of a proposed class and her statutory claims individually.

Jurisdiction is proper under 28 U.S.C. § 1332. Pending is defendant's motion to dismiss. [Doc. 18]. For the reasons discussed below, the motion shall be denied in part and a ruling on the motion held in abeyance in part.

**Background**

Plaintiff purchased a house in Norwalk, Ohio, in 2005. She purchased the house using a loan from Meritage Mortgage Corporation (Meritage). On January 25, 2005, she concurrently executed an adjustable rate note payable to Meritage a mortgage on the property.

The note required plaintiff to make monthly payments to Meritage or "anyone who takes this Note by transfer and is entitled to receive payments under this Note." [Doc. 17, at 14].

At some point defendant HomEq began acting as "servicer" of the loan. As a mortgage servicer, defendant collects payments from borrowers and, according to the terms of the note and mortgage, applies them to the borrower's mortgage obligations.

The mortgage terms required defendant to apply plaintiff's mortgage payments sequentially toward:

- Interest due under the note;
- Principal due under the note; and
- Amounts due for "Escrow Items."

[*Id.* at 22].

"Escrow Items" include: 1) "taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the property;" 2) "leasehold payments or ground rents on the property, if any;" 3) "premiums for any and all insurance required by Lender under Section 5;" and 4) "Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10." [*Id.*].

Under the mortgage, defendant could apply plaintiff's payments for other purposes – such as late charges and costs – only after funds were applied to interest, principal, and escrow items. [*Id.*]

On January 7, 2009, plaintiff sent a letter to defendant – identified as a "qualified written request" under RESPA [*Id.* at 34] – asking for details about her payments and how defendant allocated them. Her letter stated she "dispute[d] the amount that is owed according to the Monthly

Billing Statement." [*Id.*]. Plaintiff also sought "an accounting of all charges and payments for attorney fees related to loan modifications," [*Id.* at 4], in addition to other specific information.

On or about March 3, 2009, defendant HomEq responded to plaintiff's request. Its response contained plaintiff's payment history. Otherwise it "consisted largely of form documents contain[ing] virtually no individualized information or explanation." [*Id.* at 5]. Defendant additionally "failed to respond to many of Plaintiff's inquiries, instead referring her to the enclosed payment history." [*Id.*].

A "professional audit" of the payment history provided by defendant shows that defendant applied portions of plaintiff's payments to categories such as "addl payment" and "other." [*Id.*]. The payment history does not account for over $2,500 of plaintiff's payments.

**Standard of Review**

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, U.S. , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, *supra*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**Discussion**

Plaintiff asserts four causes of action: 1) unjust enrichment; 2) conversion; 3) violation of RESPA; and 4) violation of OCSPA. Defendant contends that each claim must be dismissed.

**A. Unjust Enrichment**

Defendant argues that plaintiff's unjust enrichment claim must be dismissed because plaintiff has not adequately pled that defendant unjustly retained any benefit conferred by plaintiff.

Plaintiff responds that she has adequately pled her claim.

Unjust enrichment is retention of money or benefits by one person that, in justice and equity, belong to another. *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938). The elements of an unjust enrichment claim in Ohio are: 1) plaintiff conferred a benefit on the defendant; 2) defendant had knowledge of the benefit; and 3) defendant's retention of the benefit under the circumstances would be unjust or inequitable. *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286 (2005) (citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984)).

Plaintiff's complaint alleges defendant misapplied portions of her payments by paying them into accounts labeled "addl payment" and "other." Plaintiff alleges its doing so violates the sequential order of payment priority under the mortgage and note, and, as well, defendant fails to account for $2,500 of plaintiff's funds.

Defendant, in essence, argues that because plaintiff owed the money and defendant collected it "on behalf of and for the benefit of the holder of Plaintiff's note," the payments cannot constitute a benefit conferred on defendant, "let alone one unjustly retained by HomEq for its own use." [Doc. 25, at 12].

That defendant had a right to collect the money does not mean it had a right to apply it for any purpose.

Rather, plaintiff alleges that, as a mortgage servicer,OCSPAdefendant was "required to collect and apply Plaintiff's payments according to the terms of the Note and Mortgage." [Doc. 17, at 3]. This appears from the complaint to be so: plaintiff has sufficiently alleged facts suggesting that defendant retained the money.[1]

To the extent that defendant retained funds that the note and mortgage did not permit it to retain, such benefit would be unjust.

I find plaintiff's allegations suffice to state a plausible claim for unjust enrichment. Read in favor of plaintiff, the allegation that monies are unaccounted for, or were placed in incorrect

---

[1] Unlike the situation in a case cited by defendant, *Webb v. Chase Manhattan Mortgage Corp.*, 2007 WL 709335, *4 (S.D. Ohio), where the court found that plaintiffs "ha[d] not asserted what, if anything, Defendant ha[d] allegedly retained," here plaintiff has alleged facts supporting a reasonable inference that defendant retained at least some of her money for its own benefit.

accounts creates at least a "reasonable inference," *Iqbal*, *supra*, 129 S. Ct. at 1949, that defendant retained the monies for its own benefit.[2]

While defendant is entitled to attempt to prove it correctly applied plaintiff's payments and did not unjustly retain any benefit, for purposes of a motion to dismiss, plaintiff has stated a "plausible" claim for unjust enrichment.[3]

I therefore deny defendant's motion to dismiss that claim.

**B. Conversion**

Defendant argues I must dismiss plaintiff's conversion claim because she fails adequately to plead defendant wrongfully interfered with her right to posses her property.

Plaintiff responds that she has adequately pled the claim.

In Ohio, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *State ex rel. Toma v. Corrigan*, 92 Ohio St. 3d 589, 592 (2001) (citing *Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96 (1990)).

The elements of conversion are: 1) "plaintiff's ownership or right to possession of the property at the time of the conversion;" 2) "defendant's conversion by wrongful act or disposition

---

[2] This inference is particularly reasonable one in light of the other allegations in the complaint that defendant "has been consistently unable to account for how it applied Plaintiff's payments or to provide a basis for doing so." [Doc. 17, at 4].

[3] Defendant also argues that "the Note explicitly contemplates and authorizes the existence of unapplied funds" and that "the use of suspense accounts for unapplied funds is a common and accepted practice in the residential leasing inquiry." [Doc. 25, at 13]. Plaintiff's complaint, however, does not allege that defendant retained her money in a "suspense account," but rather argues it misapplied some of her payments and has failed to account for $2,500. Defendant does not point to anything in the note or mortgage which permit it to apply payments to "addl payment" or "other" categories.

of plaintiff's property rights;" and 3) damages. *E.g., Dice v. White Family Cos.*, 173 Ohio App. 3d 472, 477 (2007).[4]

Defendant argues that "[p]laintiff has not demonstrated any entitlement to the funds submitted to [the defendant], nor can she do so." [Doc. 18, at 13-14]. Defendant also contends that "regardless of whether HomEq applied the funds in the manner Plaintiff alleges they should have been applied, Plaintiff had no entitlement to possess them because they were due and owing to HomEq at the time made." [Doc. 18, at 14].

Defendant's argument is, in essence, that: 1) plaintiff owed money on her mortgage; so that 2) therefore it does not matter what defendant did with the payments it received because plaintiff no longer had a right to possession of the funds.

---

[4] Defendant cites *Urbanek v. All State Home Mortgage Co.*, 178 Ohio App. 3d 493, 501-02 (2008), for its formulation of the elements of conversion. *Urbanek* recites the elements of conversion as "(1) a plaintiff's actual or constructive possession or immediate right to possession of the property, (2) a defendant's wrongful interference with the plaintiff's right to possession, and (3) damages."

This formulation, however omits the element of plaintiff's *ownership* of the property. In fact, the case *Urbanek* cites for this formulation, *Allied Erecting & Dismantling Co. v. Youngstown*, 151 Ohio App. 3d 16, 35 (2002), explicitly states that the first element of a conversion claim is "plaintiff's ownership or interest in the property."

Making this clear, the Ohio Supreme Court defined conversion as "wrongful exercise of dominion over property to the exclusion of the rights of the owner, *or* withholding it from his possession under a claim inconsistent with his rights." *State ex rel. Toma*, *supra*, 92 Ohio St. 3d at 592 (emphasis added). Contrary to defendant's formulation, mere "possession" is not the only inquiry.

In *Urbanek*, plaintiff sued a mortgage company, loan processor and appraiser, contending they must have converted monies he was to have received for rents, but for which defendant failed to account. *Urbanek* is, moreover, distinguishable because: 1) it did not involve a mortgage servicer; 2) the court decided the case on a motion for summary judgment, not a motion to dismiss; and 3) plaintiffs failed to provide anything more than "conjecture" about what happened to the rent payments. 178 Ohio App. 3d at 501-02.

First, at this point all that matters is what plaintiff has asserted in her complaint – not what she can or may "demonstrate" once discovery occurs.

Second, while plaintiff may no longer have *possessed* her funds, plaintiff's payment of her funds to defendant did not transfer her *ownership* interest in those funds to defendant. Ownership did not transfer until remission of the funds to the lender.OCSPA

This situation is analogous to that of a bailment.

In bailment, property is delivered "by one person to another in trust for a particular purpose, with a contract, express or implied, that the property will be returned once the purpose has been faithfully executed." OHIO JUR. BAILMENTS § 1; *see also Tomas v. Nationwide Mut. Ins. Co.*, 79 Ohio App. 3d 624, 629 (Ohio App. 1992) ("Bailment involves the transfer of a possessory interest only and not an ownership interest in property.).

Similarly here, plaintiff submitted payment to defendant with the expectation that defendant would apply them according to the terms of her mortgage and note. She never indicated that she intended to transfer *ownership* of the funds to defendant at any time.OCSPACertainly as between plaintiff and the lender's assignee, defendant did not have a claim of ownership in the funds.

In sum, contrary to defendant's argument, plaintiff's complaint is more than the "formulaic recitation of the elements of a cause of action" condemnedOCSPAby *Twombly*, *supra*, 550 U.S. at 555. SheOCSPAhas alleged that the mortgage and note required defendant to apply her payments in a certain manner. She also alleges that defendant converted her funds to its own use by misapplying her payments and failing to account for $2,500 of her payments. As discussed above, the failure to account for $2,500 raises at least an inference that defendant kept the funds. This is sufficient to allege that defendant "wrongful[ly] exercise[d] . . . dominion over property to the

exclusion of the rights of the owner, or withh[eld] it from [her] possession under a claim inconsistent with [her] rights." *State ex rel. Toma*, *supra*, 92 Ohio St. 3d at 592.

**C. RESPA**

Defendant argues that plaintiff's RESPA claim must be dismissed because plaintiff has not pled facts showing that defendant breached any duty under RESPA. Defendant also contends that plaintiff has not pled damages, or any causal link between the alleged violation and any damages suffered.

"Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process." *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002). The statute provides:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).

RESPA sets forth certain duties of a loan servicer following borrower inquiries. If a borrower makes a "qualified written request" – defined as "written correspondence" that includes "the name and account of the borrower" and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower," 12 U.S.C. § 2605(e)(1)(B) – the mortgage servicer must respond in one of three ways within 60 days:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . . ;

> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
> > (I) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer;
>
> * * * * *
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
> * * * * *
>
> > (I) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer . . . .

*Id.* § 2605(e)(2).

Plaintiff alleges – and defendant does not dispute – that defendant is a "servicer," see *id.* at § 2605(i)(2), and that plaintiff's January 7, 2010, letter is a "qualified written request," see *id.* at § 2605(e)(1)(B).

**1. Breach of RESPA Duties**

The gravamen of plaintiff's RESPA claim rests on the sufficiency of defendant's response to her qualified written request. Defendant first argues that plaintiff cannot demonstrate any breach of RESPA duties because it adequately responded to her request.

Several other courts have held that an allegation that a servicer failed to respondOCSPAadequately to a party's qualified written request is enough to overcome a motion to dismiss. *See Diamond v. One West Bank*, 2010 WL 1742536, *4 (D. Ariz) (denyingOCSPAmotion to dismiss where servicer's "only response was to send a copy of [plaintiff's] payment history. This provided no information as to the current status of the loan modification agreement [which plaintiff had requested]"); *Woods v. Greenpoint Mortgage Funding, Inc.*, 2010 WL 1729711, *7 (E.D. Cal)

(although plaintiff admitted defendant responded to his written requests, allegations "that the varied responses and documentary evidence show that the defendants are providing him with false and misleading information" sufficed to state valid RESPA claim (internal citation to the record omitted)); *Ortega v. Wells Fargo Bank*, 2010 WL 696749, *3 (S.D. Cal) (holding plaintiff who had alleged that servicer responded – but did not fully provide requested information – sufficiently pled a RESPA claim); *Ramanujam v. Reunion Mortgage, Inc.*, 2010 WL 668036, *5 (N.D. Cal.) (holding plaintiff alleging servicer "failed to conduct an investigation and failed to provide the requested information" adequately pled a RESPA violation); *Carter v. Countrywide Home Loans, Inc.*, 2008 WL 4167931 (E.D. Va) (holding that plaintiff's claim that the servicer "failed or refused to provide an adequate breakdown or explanation of charges and payment postings or to conduct a meaningful investigation of Plaintiff's request" stated claim under RESPA); *cf. Weinert v. GMAC Mortgage Corp.*, 2009 WL 3190420, *7-8 (E.D. Mich.) (holding, on a motion for summary judgment, that where defendant's response to plaintiff's qualified written request "provide[d] corresponding responses to the eight inquiries made by Plaintiff[,]" plaintiff's claim of violation of § 2605(e)(2) failed).

Plaintiff alleges defendant's response "does not meaningfully respond to several" of her requests. [Doc. 17, at 10]. She also alleges specifically that defendant:

> provided no individualized response to Plaintiff's requests, including: 1) an explanation of how the amount of the monthly billing statement was calculated or why it increased; 2) the purpose of any foreclosure fees and costs charged to Plaintiff's account; 3) a breakdown of the amount of claimed arrears or delinquencies; 4) the payment dates[,] purpose of payments and recipient of all escrow items.

[*Id.* at 10-11].

Plaintiff adequately alleges defendant breached a RESPA duty under § 2605(e)(2) by failing to fully respond to her qualified written request.[5]

**2. Damages**

Defendant secondly argues that plaintiff's complaint does not specifically allege damages flowing from defendant's inadequate response, and she thus fails to state a claim under RESPA.

If a servicer fails to comply with the response requirement in § 2605(e)(2), the borrower may recover "actual damages to the borrower as a result of the failure" and statutory damages of up to $1,000 "in a case of a pattern or practice of noncompliance." *Id.* § 2605(f)(1)(A)-(B).OCSPA

"[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages." *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).

As plaintiff points out, courts have held such claims as emotional distress,[6] *see, e.g., Weinert*, *supra*, 2009 WL 3190420, * 10, and time spent away from employment, *see, e.g., McLean v. GMAC*

---

[5] Defendant also argues that even if its initial response was inadequate, plaintiff failed to follow up and request clarification. Nothing in the statute, however, places such a duty on the person requesting information. The statute, rather, places the duty to respond on a mortgage servicer. *See* § 2605(e)(2) (noting that "the servicer *shall*" provide requested information or an explanation of why the information is not available) (emphasis added). To shift the burden as defendant argues would be counter to the borrower-protective purpose of RESPA.

[6] Courts are split on the question of whether emotional distress damages are covered as "actual damages" under RESPA and no circuit court has spoken to the issue. *Compare, e.g., Weinert*, *supra*, 2009 WL 3190420, * 10 (emotional distress damages covered as actual damages), *with Allen v. United Fin. Mortgage Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (emotional distress damages not covered as actual damage).

The "majority of other federal courts confronted with the question" of whether emotional distress damages count as actual damages, however, "find[] that such emotional damages are a part and parcel of the 'actual damages' permitted by the statute." *Weinert*, *supra*, 2009 WL 3190420, *10.

*Mortgage Corp.*, 595 F. Supp. 2d 1360, 1372 (S.D. Fla. 2009), to be recoverable as "actual damages" under § 2605(f)(1)(A).

The damages alleged must, however, be damages suffered "*as a result of the failure*" to satisfy a RESPA duty. § 2605(f)(1)(A) (emphasis added).

In opposition to the motion to dismiss, plaintiff argues that she has sufficiently alleged damages. She states that her complaint "makes clear that she has, at a minimum, suffered a great deal of inconvenience, lost time and effort." [Doc. 24, at 18]. She also contends that "her complaint clearly demonstrates that she was adversely affected by HomEq's conduct, including its failure to properly respond to her [qualified written request]." [*Id.*]. She argues that she "will show she suffered damage to her credit and non-pecuniary loss in the form of distress." [*Id.*]

These allegations, however, do not appear in the complaint and plaintiff has thus failed to plead: 1) any damages as a result of defendant's alleged RESPA violation; or 2) that such damages were *caused by* the RESPA violation.

Rather than dismiss this allegation at this point, I will hold my decision in abeyance, pending the filing by July 16, 2010, of an amended complaint (if plaintiff chooses to do so) specifically alleging actual damages from defendant's alleged statutory violation.

**D. OCSPA**

Defendant argues that plaintiff's OCSPA claim must be dismissed because OCSPA does not apply to mortgage loan servicers. Defendant argues in the alternative that even if the statute did apply, plaintiff fails to allege with sufficient particularity the facts supporting the statutory elements of a violation.

Plaintiff responds that mortgage servicers are covered under OCSPA and her complaint sufficiently alleges a violation of that statute.

I first address whether plaintiff's claim is adequately pled assuming *arguendo* that OCSPA applies to mortgage servicers, and then reach the question of whether mortgage servicers are covered by the statute.

**1. OCSPA Pleading Adequacy**

Defendant argues that, even if the OCSPA were to apply to mortgage servicers, plaintiff's complaint fails to state the factual basis of the violation adequately . Regarding the state law claim for failing to make disclosures required by federal law, defendant argues that this claim must fail because the underlying RESPA claim fails.

Plaintiff makes two distinct arguments for a violation of OCSPA.

**a. §§ 1345.02, .031**

First, plaintiff argues that defendant's "pattern of inefficiency and incompetence with respect to accounting for Plaintiff's mortgage payments and applying them according to the terms of her Note and Mortgage, or any identifiable purpose whatsoever." [Doc. 17, at 11], violates O.R.C. § 1345.02 (unfair or deceptive trade practice) and § 1345.031 (unconscionable trade practice in connection with a residential mortgage transaction).OCSPA

OCSPA prohibits a "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." § 1345.02(A). "Under [§] 1345.02, unfair or deceptive sales practices are those that are likely to induce in the consumer a false state of mind concerning the product itself." *Johnson v. Microsoft Corp.*, 155 Ohio App. 3d 626, 636 (2003). Section 1345.02(B) contains an enumerated list of practices characterized as deceptive, however the list is, by its own terms, not exclusive.

The residential mortgage section of the OCSPA provides that: "No supplier shall commit an unconscionable act or practice concerning a consumer transaction in connection with a residential mortgage." § 1345.031(A). OCSPA does not provide an exclusive list of what constitutes an unconscionable act or practice, but does set forth factors to be considered in making the determination. § 1345.03(B) (listing factors for unconscionability in non-mortgage consumer transactions); *see also Yates v. Mason Masters, Inc.*, 2002 WL 31744694, *3 (Ohio Ct. App.) (applying § 1345.03(B) factors).

Defendant's argument that plaintiff has failed to plead an "essential element of [her] cause of action," [Doc. 25, at 31], is not well-taken. First, defendant fails to identify the "element" to which it refers. It is unclear what, exactly, defendants claim plaintiff's complaint lacks in this regard.

I find the claim adequately pleads that defendant's actions constitute a violation of either the "unfair or deceptive" or "unconscionable" prongs of OCSPA. Plaintiff's complaint alleges that defendant failed to adequately respond her requests, provided inaccurate responses, and retained a portion of her payments without applying them to her loan balance.

**b. § 1345.02(F)**

Plaintiff secondly argues that defendant "knowingly failed to make disclosures required by federal law (a sufficient response to her qualified written request under RESPA)," [Doc. 17, at 12], in violation of O.R.C. § 1345.02(F).

I reserve judgment on this portion of plaintiff's claim pending her filing of an amended complaint (if she chooses to do so) alleging actual damages from the alleged violations of RESPA.

**2. OCSPA's Coverage of Mortgage Servicers**

OCSPA prohibits "unfair or deceptive" and "unconscionable" acts or practices by "supplier[s]" in connection with "consumer transaction[s]." O.R.C. §§ 1345.01-03; *see also Ferron v. Fifth Third Bank*, 2008 WL 5423555, *3 (Ohio Ct. App.) ("[F]or an act to fall under the purview of [OCSPA], it must involve a 'supplier,' a 'consumer,' and a 'consumer transaction.'").

Under the statute, a "supplier" is defined as a "person engaged in the business of effecting or soliciting consumer transactions, whether or not that person deals directly with the consumer." O.R.C. § 1345.01(C). The statute does not further define "the business of effecting."

A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of those things." *Id.* § 1345.01(A).

Section 1345.01(A) of OCSPA previously provided that a "consumer transaction" did not include transactions between persons defined in O.R.C. § 5725.01. That statute defined a "dealer in intangibles" as including:

> every person who keeps an office or other place of business in this state and engages at such office or other place in a business that consists primarily of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling bonds, stocks, or other investment securities, whether on the person's own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings.

Effective January 1, 2007, the Ohio legislature amended § 1345.01(A) to provide that "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers" are not excluded from the OCSPA.

The parties dispute whether the OCSPA covers mortgage servicers.

Relying on statutory language, legislative history, and pending legislation, defendant argues that OCSPA clearly does not apply as it is not a "supplier" nor are its dealing with plaintiff "consumer transactions."

In response, and relying on statutory language, statutory interpretation principles, an interpretation of legislative history contrary to defendant's, and the fact that the Ohio Attorney General has filed cases alleging violations of the OCSPA against mortgage servicers, plaintiff argues that OCSPA clearly applies.

Neither party, however, points to any binding Ohio authority interpreting whether the statute applies to mortgage servicers.[7]

Because the application of the statute is primarily a question of Ohio statutory interpretation and legislative intent, and no binding authority exists on the issue, I, anticipate, on further consultation with the parties, certifying this question to the Ohio Supreme Court for determination. *See* Ohio Supreme Ct. Rule of Prac. XVIII.

**Conclusion**

---

[7] Plaintiff points to one case where a court held that OCSPA applied to a mortgage servicer. *See Dowling v. Litton Loan Servicing, LP*, 2006 WL 3498292, *13 (S.D. Ohio). There, the mortgage servicer argued that although it did not fall within the definition of "financial institution" – institutions which were by statute exempt from the OCSPA – it should also be exempted. The court rejected this argument, noting that: "If the legislature intended to exempt all loan servicing agents from coverage under the OCSPA, it would have done so." *Id.*

Here, however, defendant does not argue that it falls within an exemption to the statute, but rather that the statute does not, and never did, apply to mortgage servicers. *Dowling* interpreted the scope of an exemption to OCSPA, not the scope of OCSPA itself. Additionally, as a federal district court case interpreting Ohio law, *Dowling* is not binding authority.

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendant's motion to dismiss plaintiff's unjust enrichment and conversion claims is denied;

2. Judgment as to the adequacy of plaintiff's RESPA claim and claim under § 1345.02(F) of OCSPA be, and the same hereby is held in abeyance pending plaintiff's filing of an amended complaint on or before July 16, 2010;

3. Judgment as to the application of OCSPA held in abeyance pending consideration, on consultation with the parties, of certification of question(s) as to such applicability to the Ohio Supreme Court; and

4. A telephone status/scheduling conference is set for July 6, 2010 at 11:30 a.m.; prior to said conference, the parties shall confer as to the phrasing of the question(s) subject to certification hereunder, and not later that three days prior to said conference shall file status(s) reports and their proposal(s) re. the order, etc., of certification.

So ordered.

s/James G. Carr
U.S. District Judge