**IN THE UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Sondra Anderson, et al. | ) | CASE NO. 3:09 cv 2335 |
| | ) | |
| Plaintiffs, | ) | Judge James G. Carr |
| | ) | |
| v. | ) | |
| | ) | |
| Barclays Capital Real Estate Inc. | ) | |
| dba HomEq Servicing, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY OF OHIO ATTORNEY GENERAL RICHARD CORDRAY TO DEFENDANT'S RESPONSE TO STATUS REPORT OF OHIO ATTORNEY GENERAL RICHARD CORDRAY**

**A.  Introduction**

Defendant Barclays Capital Real Estate Inc., dba HomEq Servicing ("HomEq"), incorrectly asserts at p. 4 (doc. #39) that certification would "put this pure legal question to rest promptly and efficiently." In fact, the proposed certification would delay for over a year the major portion of this case and would also delay discovery and the August 22, 2011 trial date in the state court case before Judge O'Connell that the Attorney General filed under the Consumer Sales Practices Act ("CSPA") against HomEq for its mistreatment of over 170 Ohio consumers.[1] On September 16, Judge O'Connell overruled HomEq's Motion to Dismiss (Exhibit D), and that case should proceed to trial. Moreover, certification would not resolve even the individual count in this case and would ask the Supreme Court for an advisory opinion that does not comply with S. Ct. Prac. R. XVIII, which requires determinative questions of law.

---

[1] See Scheduling Order attached as Exhibit A. HomEq. has already filed one Motion for Stay (copy of Motion, without exhibits, attached as Exhibit B) in the case before Judge O'Connell. Judge O'Connell denied the Motion, noting there had been no certification (Exhibit C).

1

HomEq, moreover, removed this case from state court in October of 2009 solely on the grounds of diversity and the Class Action Fairness Act, voluntarily choosing to avoid state courts.[2] HomEq has changed its mind and now seems to argue that only the Ohio Supreme Court should issue a decision on the CSPA –- skipping over the state trial court in which Plaintiffs filed this case and disregarding the September 16 decision of Judge O'Connell rejecting HomEq's Motion to Dismiss the CSPA claim against HomEq. Certification here would be inconsistent with the principle recognized by the Sixth Circuit that a party "who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification." *Cantwell v. University of Mass.*, 551 F2d. 879, 880 (1st Cir. 1977), quoted in *Shaheen v. Yonts*, 2010 U.S. App. LEXIS 18461, *23-24 (6th Cir. Aug. 31, 2010). See also G.J. Yonover, *A Kinder, Gentler Erie: Reining in the Use of Certification,* 47 Ark. L. Rev. 305, 331 (1994)("To permit…a removing defendant…to 'have her cake and eat it too'…seems manifestly unfair").

**B.    The Proposed Certification Would Not Be Prompt Or Efficient**

The delays certification would entail warrant the denial of certification here. Judge Selya wrote, "In the diversity setting, certification undercuts judicial economy by institutionalizing inefficiency." Hon. B. M. Selya, *Certified Madness: Ask A Silly Question*, 29 Suffolk U.L.Rev. 677, 688 (Fall 1995). In addition, as discussed next, a delay of over a year in this case would delay the scheduled trial in a case filed by the Attorney General against HomEq in state court (see n. 3 below) which involves the interests of hundreds of consumers.

---

[2] Doc. #1. "The traditional explanation for the grant of diversity jurisdiction in federal trial courts has been that the Founding Fathers feared 'possible unfairness by state courts, state judges and juries, against outsiders.'" D.K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens Of Federalism*, 78 Va.L.Rev. 1671, 1672 (1992).

1. <u>Certification would likely delay all further proceedings in this case for over a year and would damage the cases filed by the Attorney General</u>

Even if the proposed questions were certified to the Supreme Court on September 30, and the Supreme Court accepted the questions, it would likely be more than a year before the Supreme Court issued a decision. Even then the Supreme Court could decide not to answer all the certified questions. For example, in *Arbino v. Johnson & Johnson* ("Arbino I"), on June 20, 2006, the U.S. District Court for the Northern District of Ohio certified four questions to the Ohio Supreme Court. 2006 U.S. Dist. LEXIS 41032 (Katz, J.). On August 23, 2006 in *Arbino v. Johnson & Johnson* ("Arbino II"), the Supreme Court accepted certification of three of the four questions. 110 Ohio St. 3d 1462, 2006-Ohio-4288. More than one and a half years after certification, the Supreme Court in *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 2007-Ohio-6948 ("Arbino III") ruled on the merits of two of the three certified questions, but declined to decide the third question "because Arbino lacks standing to challenge that statute." Id. at ¶8.

Such delays in certification are not unique to *Arbino*. In *McNamara v. City of Rittman*, 107 Ohio St.3d 243, 2005-Ohio-6433 ("McNamara II"), there was a similar delay between the date a single question was certified to the Supreme Court and when the Supreme Court answered the question. The Sixth Circuit certified the question on February 20, 2004, and on April 28, 2004 the Supreme Court agreed to answer the question. *McNamara v. City of Rittman,* 102 Ohio St.3d 1420, 2004-Ohio-2003 ("McNamara I"). The decision on the merits of the question in *McNamara* was December 21, 2005, a year and ten months after the Sixth Circuit certified the question. *McNamara II*, 107 Ohio St.3d 243, 2005-Ohio-6433.

A year and a half delay in this case would result in a decision in the Supreme Court being issued after the currently scheduled trial dates in each of the state court cases the Attorney General has filed against HomEq, American Home Mortgage Services, Inc. ("AHMSI") and

3

Carrington Mortgage Services LLC ("Carrington").³ HomEq has said it will re-file its Motion for Stay in the case before Judge O'Connell, and it is likely the other servicers would follow HomEq's lead. Even if only HomEq moved for a stay, a stay would deprive the hundreds of consumers whose interests are at stake in that case of their August 22, 2011 trial. In addition to the harm caused by foreclosures, maintaining contact with witnesses forced out of their homes is difficult, and a delay of over a year would give opposing counsel the opportunity at trial to more effectively challenge the memory of the witnesses against the servicers. Such delay would be a victory for HomEq.

Anderson filed the CSPA claim in this case on March 23, 2010 (doc. #17), three months after the Attorney General filed its CSPA litigation against HomEq in state court (copy of Attorney General's Complaint attached, without exhibits, as Exhibit I). To the extent that the applicability of the CSPA involves a "pure question of law," the doctrine of comity may suggest that this Court defer to the August 22, 2011 trial before Judge O'Connell in state court and his adoption of *Dowling v. Litton Loan Servicing*, 2006 U.S. Dist. LEXIS 87098 (S.D. Ohio, 2006). See, e.g., *Rhines v. Weber*, 544 U.S. 269, 274 (2005), quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)(Comity "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter"). See also, J.R. Long, *Against Certification*, 78 Geo. Wash. L. Rev. 114, 141, n. 136 ("certification….eliminates the sort of 'percolation' that both the federal and state high courts routinely favor").

---

³ The trial date for the case against Carrington (Judge Fais) is May 24, 2011; the trial date for the case against HomEq (Judge O'Connell) is August 22, 2011 and the trial date for AHMSI (Judge Sheward) is November 7, 2011 (see Exhibits A, E and F). The Attorney General has produced over 40,000 pages of documents in the Carrington litigation, and Carrington produced additional documents on September 17 (see Exhibit G, without exhibits). AHMSI is scheduled to produce its documents in the AHMSI litigation on October 1, and the Attorney General is scheduled to produce documents on October 15. The Attorney General has submitted discovery requests to HomEq, and HomEq's response date is October 20 (see cover letter, first page of discovery request and subsequent communications as Exhibit H).

4

As discussed below, certification would not even result in a conclusive determination of the CSPA count in this case.

2. <u>Inefficiencies -- the proposed questions are vague, and answers would not resolve the CSPA questions in this case</u>

Does question 1 mean, "Are [<u>all</u>] entities that service residential mortgage loans 'suppliers' as defined," or does it mean "Are [<u>some</u>] entities that service residential mortgage loans 'suppliers' as defined?" Similarly, when Question 2 asks, "Does servicing of a borrower's residential mortgage loan constitute a 'consumer transaction'…," is Question 2 asking if <u>any type of servicing</u> necessarily constitutes a consumer transaction, or is it asking if <u>all types of servicing</u> constitute consumer transactions? Does receiving and crediting payments from a consumer and allocating them to the proper account of the lender (n. 1 of HomEq's Response) - without any communication from the servicer to the borrower - constitute a consumer transaction? Does<u> requiring borrowers to sign loan modifications with unfair and unconscionable provisions</u> (¶16f of the Complaint filed by the Attorney General against HomEq) constitute a consumer transaction? The questions are unclear to the Attorney General and are likely to be unclear to the Supreme Court as well.

If questions 1 and 2 are whether all mortgage servicers <u>are</u> suppliers and whether all mortgage servicing involves "consumer transactions," the answer is clearly no. The second sentence of R.C. 1345.01(A) expressly exempts many loans from financial institutions, dealers in intangibles and insurance companies from the definition of consumer transactions. The entities in such transactions are also not suppliers, since under R.C. 1345.01(C), in order to be "a supplier," the entity must be engaged in a consumer transaction. However, there is no allegation that HomEq is a financial institution, a dealer in intangibles or an insurance company.

5

Therefore, negative answers (not all entities servicing mortgage loans are suppliers in consumer transactions) would not address whether HomEq is a supplier in a consumer transaction,.

If the questions are whether entities providing services to consumers in mortgage loans <u>can be</u> suppliers, the answer is, the Supreme Court could clearly answer yes without resolving this case – or even guiding the resolution of this case. After all, the second sentence of R.C. 1345.01(A) expressly includes "transactions in connection with residential mortgages between…nonbank mortgage lenders and their customers" as covered consumer transactions, and R.C. 1345.01(A) expressly includes services as consumer transactions. It is clear that nonbank mortgage lenders providing services to their customers are suppliers in consumer transactions. Since there is no allegation that HomEq is a nonbank mortgage lender, a conclusion that some entities, such as nonbank mortgage lenders, could be suppliers in consumer transactions would not guide the outcome of this case. Also, without naming specific types of entities, R.C. 1345.031(A) provides, "No supplier shall commit an unconscionable act or practice concerning a consumer transaction in connection with a residential mortgage." The Supreme Court could answer that some entities servicing residential mortgages are suppliers in consumer transactions without addressing whether HomEq is a supplier in a consumer transaction.

Any question proposed to the Supreme Court should identify whether or not HomEq is a financial institution, dealer in intangibles, insurance company or nonbank mortgage lender.[4] Yet HomEq appears to oppose such clarification. Even such a mention of those entities, however, would not be sufficient. Without a detailed recitation of the facts alleged in the Second Amended Complaint, any question presented to the Supreme Court would still be insufficient and result in additional inefficiencies.

---

[4]  See p. 6 of Status Report of the Attorney General, doc. #38, for its proposal on this point.

6

### 3. Inefficiencies -- the proposed questions contain no facts

Without presenting the facts to the Supreme Court, any decision would be inconclusive, since "if it is not necessary [for a court] to decide more, it is <u>necessary not to decide more</u>." *State ex rel. Hamilton Cty Bd of Comm's v. Hamilton Cty Court of Common Pleas*, 126 Ohio St. 3d 111, 2010-Ohio-2467, ¶39 (Emphasis added, citations omitted). If the Supreme Court accepted certification and, a year and a half from now, decided that an entity which "engages in the business of receiving mortgage payments from a borrower pursuant to the terms of a residential mortgage loan" (p 2 of HomEq's Response) was <u>not a supplier engaged in a consumer transaction</u>, that would not decide more. It would not determine whether an entity was a supplier in a consumer transaction if the entity (a) required consumers to execute unconscionable loan modification documents, (b) executed false assignments to foreclose on consumer's houses, or (c) maintained a customer service department and failed to respond to written requests from customers as required by the Real Estate Settlement Procedures Act ("RESPA), 12 U.S.C. §2601, et seq. (see allegations in complaints in HomEq cases discussed on next page).

Indeed, the Supreme Court, let alone a lower state court, could rule differently in the next CSPA case presented to that court if the defendant in the next case did more than simply collect payments and apply them to loan accounts without contacting the borrower. After all, "stare decisis applies to rulings rendered in regard to specific statutes, [but] it is limited to circumstances 'where the facts of a subsequent case are substantially the same as a former case.'" *State of Ohio v. Bodyke*, 2010-Ohio-2424, ¶33, quoting *Arbino III*, 116 Ohio St.3d 468 at ¶ 23, in turn quoting *Rocky River v. State Emp. Relations Bd*. (1989), 43 Ohio St. 3d 1, 5.

The phrasing of questions presented in any case can of course affect the outcome of that case. The "language and scope of the questions certified determine, to a large extent, the interpretation and application of the state law or policy in question….As Justice Felix

7

Frankfurter noted, '[p]utting the wrong questions is not likely to beget right answers even in law.'" J.B. Corr and I.P. Robbins, *Interjurisdictional Certification and Choice of Law*, 41 Vand. L. Rev. 411, 425 (April, 1988).

HomEq tries to paint a simplistic, innocuous and incorrect picture of servicers: "A Mortgage Servicer is simply one who engages in the business of receiving mortgage payments from a borrower pursuant to the terms of a residential mortgage loan" (p. 2 of its Response).[5] In contrast, the allegations of Plaintiffs in the three cases filed against HomEq are far more detailed and reflect much more HomEq contact with consumers, such as:

> [selected allegations in *State of Ohio ex rel. Cordray v. Barclays* before Judge O'Connell]
> - ¶16f.  requiring borrowers to sign loan modifications with unfair and unconscionable provisions that are unconscionably one-sided in Defendant's favor;
> - ¶16g.  purchasing forced-place insurance to cover homeowners' dwellings when such insurance was not necessary or justified….
>
> [selected allegations in *Kline v. Barclays* before Judge Rice]
> - ¶38.  ….requested and facilitated the filing of legal pleadings and other documents in foreclosure actions which they know falsely represented that an entity is the current owner of a deed and mortgage.…
> - ¶42.  HomeQ and MERS regularly execute Assignments of Mortgage which falsely represent that an employee and officer of HomeQ is an employee and/or officer of MERS.…[6]
>
> [selected allegations in *Anderson v Barclays* before Judge Carr]
> - ¶¶61 and 81.  Pursuant to RESPA at 12 U.S.C. §2605(e)(2) HomEq was obligated [to] conduct an investigation and provide Plaintiff with a written explanation….HomEq knowingly failed to make disclosures required by federal law (a sufficient response to her qualified written request under RESPA)….;

---

[5] Although HomEq capitalizes Mortgage Servicer as if it is a defined term, Ohio law does not define "mortgage servicer." N. 1 of HomEq's Response, also at p. 2, admits that "a Mortgage Servicer's obligations certainly could include some or all of the activities identified in the Attorney General's Status Report and the Plaintiff's Second Amended Complaint," but concludes with the simplistic brush: "however, at base, a Mortgage Servicer is one who collects payments due under a mortgage loan and applies them to the borrower's account."

[6] Different counsel represent HomEq in the case before Judge Rice.  HomEq has filed a Motion to Dismiss in that case (which Motion is still pending) but has not filed a Motion to Stay or to Certify.

- ¶71.b. Maintains a <u>customer service department</u> and call center to which Ohio residents with loans being serviced by HomEq are directed to call with questions or concerns about their mortgage loans.

(Emphasis added).

In fact, when not defending itself in litigation, HomEq has defined "servicing" much more broadly than in its Response. In a May 28, 2010 Asset Purchase Agreement with Ocwen Loan Servicing, LLC (excerpts attached as Exhibit J), HomEq defined "servicing" to include "(e) the pursuit of foreclosure and alternative remedies against a related Mortgaged Property; and (f) the administration and liquidation of REO Properties, and, in each case, all rights, powers and privileges incidental to any of the foregoing, and expressly includes the right to enter into arrangements with third parties that generate Ancillary Income and benefits with respect to the Mortgage Loans."  Under a 2006 Pooling and Servicing Agreement ("PSA") under which HomEq is the servicer, the duties of HomEq include the following actions with respect to borrowers (excerpts of the PSA attached as Exhibit K):  3.01 –"execute and deliver any and all instruments of partial and full release…" with respect to the borrower; 3.07—"waive any late payment charge or, if applicable, any penalty interest" and extend due dates for payments in certain situations with respect to the borrower; 3.14—enforce due on sale clauses against borrowers (i.e., consumers); and 3.15—"to foreclose upon … the ownership of properties" against the borrowers.

HomEq resists setting forth the facts alleged in the Second Amended Complaint about HomEq's servicing, thereby asking the Supreme Court for an advisory opinion.

    4.    <u>Without any facts, the proposed questions ask for an improper advisory opinion</u>

By not setting forth <u>any</u> facts with the proposed questions (see attached Exhibit L), HomEq is asking for an improper advisory opinion. At p. 5 of its Response, HomEq even complains that the Attorney General does not join in the request for an advisory opinion, stating,

9

"the Attorney General offers a convoluted, argumentative proposed 'question' that looks more like a <u>case-specific allegation</u> than a good-faith attempt to articulate a question of law to be certified to the Supreme Court of Ohio." (Emphasis added) Yet this is a specific case, not a law school exam or other abstract proposition.

The Ohio Supreme Court says that "it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts….It has become settled judicial responsibility for courts to <u>refrain from giving opinions on abstract propositions</u>…." *Fortner v. Liquor Control Comm'n*, 22 Ohio St. 2d 13, 14 (1970)(Emphasis added). The proposed questions here present abstract propositions, because not only do they omit any facts, but the CSPA does not define "mortgage servicers" or "entities that service residential mortgages." HomEq simply presents abstract questions removed from any real world moorings.

The Supreme Court held in *Arbino III*, "Every court must refrain from giving opinions on <u>abstract propositions</u> and…avoid the imposition by judgment of premature declarations or advice upon potential controversies." 116 Ohio St. 3d at ¶84 (citing *Fortner*, 220 Ohio St. 2d at 14)(Emphasis added) The Court concluded, "It is well-settled law that this court will not issue such advisory opinions….We therefore decline to answer the second certified question." Id. Similarly, in *Egan v. National Distillers & Chemical Corp.*, 25 Ohio St. 3d 176, syllabus and 178 (1986), the Court held, "Any opinion the court might express regarding such setoffs to damages not actually awarded would be purely advisory, and it is well-settled that this court will not indulge in advisory opinions."

Although some argue that "certification invites state courts to issue advisory opinions" when the questions are abstract, the Attorney General agrees that "certified questions are not

10

abstract when they are accompanied by a statement of facts." See, e.g., *Against Certification*, 78 Geo. Wash. L. Rev. at 143-144; and *Interjurisdictional Certification*, 41 Vand. L. Rev. at 423. Perhaps avoiding courts asking for advisory opinions is the reason S.. Ct. Prac. R. XVIII, § 2, requires a statement of facts:

> A <u>statement of facts showing the nature of the case</u>, the circumstances from which the question of law arises, the question of law to be answered, and any other information the certifying court considers relevant to the question of law to be answered. (Emphasis added)

If this Court determines to certify questions to the Ohio Supreme Court, it should include the allegations of facts set forth in the Second Amended Complaint.

Ohio courts have specifically recognized the importance of considering the specific facts in CSPA cases. In *Brown v Liberty Clubs Inc.* (1989), 45 Ohio St. 3d 191, 193 and 195, the Supreme Court recognized that although the CSPA "has no application in a 'pure' real estate transaction," it held that "the Consumer Sales Practices Act, embodied in <u>R.C. Chapter 1345</u>, is applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services, and the transfer of real property." See also, *Montgomery v Purchase Plus Buyer's Group, Inc.* ,2002 Ohio App. LEXIS 1966, 2002-Ohio-2014, *18 (Franklin Cty. Apr. 25, 2002), quoting *Brown*.

Courts, judges, and other scholars also recognize the importance of carefully framing certified questions and the facts included in certified questions. "Inadequate framing of the questions and the occasional absence of a proper factual background characterize many courts' complaints about certified issues." *Interjurisdictional Certification*, 41 Vand. L. Rev. at n. 62. Agreeing, Judge Sloviter concluded, "A poorly drafted question is problematic, as it may either make it difficult for the answering court to frame a suitable response, or lead to nonuseful answers from the point of view of the certifying court….A similar problem may arise when the

11

factual background is inadequately presented." *Diversity Jurisdiction*, 79 Va. L. Rev. at n. 79. In spite of what HomEq argues in its Response for presenting questions removed from any facts, if there is going to be certification, this Court should set forth the facts alleged in the Second Amended Complaint and limit the question(s) to those facts.

**C.     The Proposed Questions Do Not Satisfy Supreme Court Practice Rule 18.1**

1.     Rule XVIII, § 1, and the State's Interests

As cited by the Attorney General on p. 1 of its Status Report, Rule XVIII, section 1 of the Ohio Supreme Court Rules of Practice provides:

> XVIII.1. "This rule may be invoked when the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." (Emphasis added)

The proposed certified questions do not meet the above standard that the questions be determinative or be questions of law (see pp. 1-2 of Status Report of Attorney General).

In its Response and in the Joint Status Report (doc. #31), HomEq disregards the constitutional role of the Attorney General, the Ohio executive officer with the constitutional responsibility and power to represent the State's interests in litigation and "promote the proper allocation of judicial power among Ohio's courts." See *State ex rel. Cordray v. Marshall*, 123 Ohio St. 3d 229, 2009-Ohio-4986, ¶20, quoting *State ex rel. Rogers v. Marshall*, 2008-Ohio-6341, ¶17 (Scioto Cty.); *State ex rel. Doerfler v. Price*, 101 Ohio St. 50, 57 (1920); and Article III, §1 of the Ohio Constitution. In addition, HomEq disregards that R.C. 1345.05 gives the Attorney General the responsibility to enforce the CSPA. The Attorney General is exercising his authority in representing the State's interests in trials in the state court cases against HomEq, AHMSI and Carrington. The State's interests call for allowing the CSPA claims to go to trial as scheduled in the cases the Attorney General filed against HomEq, AHMSI and Carrington. In

*Scott v. Bank One Trust Co.*, 62 Ohio St. 3d 39, 42 (1991), the Supreme Court said, "if answering certified questions serves to further the state's interests and preserve the state's sovereignty, the appropriate branch of state government – this court – may constitutionally answer them." Here certification would frustrate the State's interests in state court trials, so even if the proposed questions satisfied Rule XVIII, there should be no certification. See ,e.g.*, Arbino III*, 116 Ohio St. 3d at ¶44 ('When the Constitution [Section 16 of Article 1] speaks of remedy and injury to person, property, or reputation, it requires an opportunity granted at a meaningful time and in a meaningful manner," quoting *Hardy v. VerMeulen*, 32 Ohio St. 3d 45, 47). However, as set forth below, the proposed questions fail to satisfy Rule XVIII.

      2.    <u>Certified questions must be determinative</u>

Not only are the proposed questions vague, but however the Supreme Court interpreted them, the proposed questions would not result in determinative responses. Indeed, in its Motion for Stay before Judge O'Connell, HomEq only asserted at p. 1 that a ruling by the Supreme Court would be "highly relevant" (p. 1 of Exhibit B). The proposed questions do not satisfy the determinative requirement of Rule XVIII.

In his Status Report, the Attorney General cited two Ohio Supreme Court decisions on the requirement that certified questions be determinative. One, *McNamara v. City of Rittman*, 107 Ohio St. 3d 243, 2005-Ohio-6433, ¶7, involved two complaints for damages filed by landowners against municipalities for harming the groundwater in their respective properties. If the landowners had no property interest in the groundwater, they had no cause of action. The Supreme Court accepted certification because "the issue of whether petitioners have a property right in groundwater is dispositive…." Not only was groundwater defined in R.C. §1521.01(D), but groundwater and the permissible uses of groundwater had been defined and applied for years

13

pursuant to the 4 Restatement of Law 2d, Torts §§ 845 and 858. See Id. at ¶¶22 and 34. Here there is no comparable factual predicate for a ruling, unless the certified questions set forth (1) the facts alleged in the Second Amended Complaint and (2) whether HomEq is a "financial institution," "dealer in intangibles," "insurance company," or "nonbank mortgage lender."

The second case cited by the Attorney General, *Gutman v. Feldman*, 97 Ohio St. 3d 473, 2002-Ohio-6721 (2002), involved a suit by investors against individuals who had induced the plaintiffs to invest in business contracts pursuant to oral contracts. The defendants moved to dismiss the securities counts, and the district court certified the question of whether oral contracts constituted securities under the definition of securities within §1707.01(B). The Supreme Court accepted certification, quoting the District Court's conclusion, "It is a question of determinative importance in this litigation. It is not fact specific." Id. at ¶10. Although the Supreme Court's decision in *Gutman* supports the principle that a certified question does not have to determine the outcome of all elements of a federal case, the language in *Gutman* still requires that a certified question be of determinative importance in the litigation and not be fact specific.

In the present case, the proposed certified questions on the individual CSPA count are neither determinative or of determinative importance in this litigation -- the two class action counts overwhelm the individual counts. On the last conference call, counsel for Plaintiffs indicated that certifying the CSPA questions to the Supreme Court would be an example of "the tail wagging the dog." There was not even a CSPA claim in the case until Plaintiffs filed the First Amended Complaint (compare doc. #1 Exhibit A, with doc. #17), after HomEq had removed the case to this Court. The proposed questions are not of determinative importance to this case and fail to satisfy Rule XVIII on this ground alone.

      3.      <u>The two federal cases cited by HomEq on certification support the State's position</u>

HomEq cited two federal cases on the meaning of Ohio Supreme Court Rule XVIII, rather than discussing any Ohio Supreme Court case. In both of those cases, moreover, the federal court denied requests to certify questions to the Ohio Supreme Court.

One of those two federal decisions said: "A question which may be determinative of a proceeding is one which would form the basis of the Court's disposition of one or more of a plaintiff's causes of action." *Professionals Direct Ins Co. v. Wiles, Boyle, Burkholder & Bringardner* Co., 2008 U.S. Dist. LEXIS 77188, *4 (S.D. Ohio Aug. 25, 2008)(J. Smith). That statement was dicta, however, because the court declined to certified the proposed question, holding: "While the questions presented by Plaintiff are certainly significant as to what documents Plaintiff is obliged to produce in discovery, they will not themselves be determinative of these proceedings....Consequently, they are not certifiable under Ohio Supreme Court Rule XVIII, and this Court declines to issue an order certifying them." Id.

In the second case cited by HomEq, the federal court declined to certify any of three proposed questions. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733 (6th Cir. 1999). The Sixth Circuit said,"….The first question….although unresolved under Ohio law, is <u>not</u> determinative in this proceeding because there is no need for this court to reach it.….We therefore decline to certify Question 1….Question 2….Unless and until the Ohio Supreme Court rules to the contrary, this is not an open question in this circuit….There is thus no need to certify Question 2. Question 3….As with Super Sulky's other proposed questions, however, it would not be determinative of this appeal….We therefore decline to certify Question 3 to the Ohio Supreme Court."

15

The Attorney General suggests that both the language and holdings in *Super Sulky* and *Planned Parenthood* support the position of the Attorney General and the above Ohio Supreme Court decisions that if certified questions will not determine the proceedings or are not of determinative importance, certification is inappropriate. See also, *Planned Parenthood Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008)("As a prerequisite to certifying a question, we must determine that 'there is a question of Ohio law that may be determinative of the proceeding…'") (citing S.. Ct. Prac. R. XVIII, §1). However, the proposed questions also fail to meet Rule XVIII, because they do not present questions of law .

4. The certified questions are not "pure legal questions"

Contrary to what HomEq asserts at p. 4, the applicability of the CSPA to the activities of HomEq is not a "pure legal question." The Supreme Court concluded that "a question of statutory interpretation…is a mixed question of law and fact." *Ohio Acad. Of Nursing Homes v. Ohio Dept. of Job and Family Services*, 114 Ohio St.3d 14, 2007-Ohio-2620, ¶12, n. 4. Similarly, in *Campanelli v. AT&T Wireless Servs.*, 85 Ohio St. 3d 103, 106, 1999-Ohio-437, the Supreme Court held, "The determination of whether an entity is a public utility is a mixed question of law and fact." See also, *Westside Cellular, Inc. v. Public Util. Comm'n of Ohio*, 98 Ohio St. 3d 165, 2002-Ohio-7119, ¶10 ("the adequacy of Cellnet's complaint to trigger Ameritech's liability exposure is a mixed question of fact and law"); and *Omerza v. Bryant & Stratton*, 2007-Ohio-5215, ¶12 (Lake Cty) ("whether the faxed document was an advertisement under the purview of the TCPA … [the federal Telephone Consumer Protection Act of 1991] presents a mixed question of law and fact."). Whether the CSPA applies to the actions of HomEq alleged in the Second Amended Complaint poses a mixed question of law and fact that does not fit within S. Ct. Prac. R. XVIII.

When a certified question includes the necessary facts for the Supreme Court to decide the question of law portion of a mixed question of law and fact, then certification might be appropriate. For instance, in *Scott*, 62 Ohio St. 3d at 41, the Supreme Court accepted certification of the following questions: "Whether spendthrift trusts are valid and enforceable under Ohio law. Specifically, is the spendthrift clause contained in the Brewer Trust enforceable under Ohio law?" Unlike the present case, the certifying court placed the specific spendthrift trust at issue. Even in the common case of certification where the plaintiff seeks to enjoin a state statute, the necessary facts have been presented to the Supreme Court. *See, e.g., Cordray v. Planned Parenthood Cincinnati Region*, 122 Ohio St. 3d 361, 2009-Ohio-2972 ¶¶5-25 (2009), reciting Facts and Procedural History. Since HomEq resists mentioning the facts alleged in the Second Amended Complaint in the certified questions, the questions are not "pure legal questions" and do not satisfy the requirement of Rule XVIII, §2, that there be a "<u>statement of facts showing the nature of the case</u>, [and] the circumstances from which the question of law arises…"

**D.     Conclusion**

If this Court certified the questions proposed by HomEq; if the Supreme Court accepted certification; and if the Supreme Court ruled on the certified questions, the decisions would not even resolve the specific CSPA issues before this Court. Moreover, after a delay of likely more than a year, HomEq would then oppose class certification (note 1 of doc. 18) in the main part of this case. The course HomEq is proposing would be lengthy, inefficient and not of determinative importance to this case. This certification process and related stays would also deprive hundreds of consumers of their interests in the scheduled August 22, 2011 trial in state court before Judge O'Connell.

For the reasons set forth above, the Attorney General respectfully requests that this Court not certify the proposed questions to the Supreme Court.

        Respectfully submitted;

        RICHARD CORDRAY
        OHIO ATTORNEY GENERAL

        /s/ Susan Choe
        Susan Choe (0067032)
        Consumer Protection Section Chief
        Consumer Protection Section
        30 East Broad Street, 14th Floor
        Columbus, Ohio 43215
        614.466.1305
        614.466.8898 (fax)
        Susan.Choe@Ohioattorneygeneral.gov

        /s/ Douglas L. Rogers
        Douglas L. Rogers (0008125)
        Special Counsel to the Attorney General of Ohio
        30 East Broad Street, 14th Floor
        Columbus, Ohio 43215
        614.466.1305
        614.466.8898 (fax)
        Douglas.Rogers@ohioattorneygeneral.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Reply of Ohio Attorney General Richard Cordray to Defendant's Response to Status Report of Ohio Attorney General Richard Cordray was served via CM/ECF notification on all counsel of record on September 20, 2010.

/s/ Douglas L. Rogers_____